**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**LAKE CHARLES DIVISION**

| | |
|---|---|
| **STREAM FAMILY LIMITED PARTNERSHIP** | **CASE NO. 2:25-CV-01856** |
| **VERSUS** | **JUDGE JAMES D. CAIN, JR.** |
| **TARGA MIDSTREAM SERVICES LLC** | **MAGISTRATE JUDGE LEBLANC** |

# MEMORANDUM RULING

Before the court is a Motion for Remand [doc. 14] filed by plaintiff Stream Family Limited Partnership [doc. 14] and a Motion for Limited Jurisdictional Discovery [doc. 18] filed by defendant Targa Midstream Services LLC. Both have been opposed [docs. 16, 18] and each respective movant has replied [docs. 17, 21], making the motions ripe for resolution.

The motion was initially referred to the magistrate judge for review, report, and recommendation in accordance with the provisions of 28 U.S.C. § 636 and the local rules of court. The undersigned hereby **RECALLS** the referral and issues this ruling.

## I. BACKGROUND

Plaintiff originally brought this action in the 38th Judicial District Court for Cameron Parish, Louisiana. Doc. 1, att. 1. Defendant timely removed the matter, asserting that this court may exercise diversity jurisdiction under 28 U.S.C.§ 1332. Doc. 1. Plaintiff now moves to remand on the basis that Plaintiff shares Texas citizenship with Defendant.[1] Doc. 14, att. 1, p. 6.

[1] According to the unchallenged allegations in the Notice of Removal and Defendant's Diversity Jurisdiction Disclosure Statement, Defendant is a citizen of Delaware and Texas. Doc. 1, pp. 4-5; doc. 3.

For diversity purposes, a limited liability company or limited partnership's citizenship is determined by the citizenship of all its "members." *Harvey v. Grey Wolf Drilling Co.*, 542 F.3d 1077 (5th Cir. 2008). If the members of such an entity are themselves limited liability companies or other unincorporated entities, "their citizenship must be alleged in accordance with the rules applicable to that entity, and the citizenship must be traced through however many layers of members or partners there may be." *Rodidaco, Inc. v. Chesapeake Energy La. Corp.*, No. 18-cv-0316, 2018 WL 3551525 at *1 (W.D. La. July 24, 2018). Here, the motion to remand requires the court to consider the citizenship of two trusts that are in the ownership chain of Plaintiff.

The potentially diversity-destroying trusts are the "Sandra Stream Miller Insurance Trust" (the "Insurance Trust") and the "Sandra Stream Miller Trust" (the "Sandra Trust"), which are both alleged to be in the ownership chain of Plaintiff. *See* Doc. 12; doc. 14, att. 1, p. 8. Both the Insurance Trust and the Sandra Trust (collectively, the "Trusts") have an individual, Benjamin Heard ("Heard"), as a co-trustee. If the Trusts take their citizenship from Heard, they will impart his Texas citizenship down the ownership chains of Plaintiff making it non-diverse from Defendant.

Defendant argues that Heard's citizenship is irrelevant because he is a sham trustee appointed to defeat diversity jurisdiction and nonetheless lacks real control over the Trusts such that the Trusts should be deemed to derive their citizenship from other constituents of the trust relationship. Plaintiff argues that Heard's citizenship determines the citizenship of the Trusts, and that, consequently, Plaintiff is a citizen of Texas and thus non-diverse from Defendant. This disagreement is possible because the analysis governing the citizenship of a trust can be more nuanced and complex than for other non-incorporated entities.

Defendant subsequently filed the instant Motion for Limited Jurisdictional Discovery, seeking an order from this court allowing limited discovery regarding the citizenship of Plaintiff's partners to provide Defendant and this court access to necessary jurisdictional facts. Doc. 18. Specifically, Defendant seeks information regarding the circumstances and purpose of Heard's appointment as co-trustee for the Trusts and information regarding Heard's control over the Trusts so it can be determined whether Plaintiff must take the citizenship of Heard. *Id.* at att. 2, p. 2. This, Defendant contends, is important as Defendant argues that a trust's citizenship is based on the citizenship of the person who has actual control over the trust assets. Defendant also cites to a recent case before this court involving the same Plaintiff wherein this court allowed jurisdictional discovery similarly requested regarding the citizenship of the Trusts in Plaintiff's chain of ownership.[2] Plaintiff opposes this motion, asserting that all the facts that are needed to determine if the court has jurisdiction have been provided and that Defendant has failed to uphold its burden of showing what new facts it intends to discover through discovery if permitted. Doc. 20.

## II.
## LAW & ANALYSIS

"'Federal courts are courts of limited jurisdiction,' possessing 'only that power authorized by Constitution and by statute.'" *Gunn v. Minton*, 568 U.S. 251, 256, 133 S. Ct. 1059, 1064 (2013) (citing *Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 377, 114 S. Ct. 1673, 1675 (1994)). Any civil action brought in a state court of which the district courts have original jurisdiction may be removed to the proper district court. 28 U.S.C. § 1441(a). However, a federal district court must remand the action to state court if it finds it lacks subject matter jurisdiction. 28 U.S.C. § 1447(c).

---

[2] *See Stream Family Limited Partnership et al v. Occidental Chemical Corp. et al*, Case No. 2:24-cv-00864-JDC-TPL. The court also notes that Defendant relied on this case in its Notice of Removal. Doc. 1, pp. 11-12.

District courts have original jurisdiction over all civil actions between citizens of different states where the amount in controversy exceeds $75,000, exclusive of interest and costs. 28 U.S.C. § 1332(a)(1). The diversity provisions of § 1332 require complete diversity among the parties. *Caterpillar Inc. v. Lewis*, 519 U.S. 61, 68, 117 S. Ct. 467, 472 (1996). The removing party bears the burden of showing federal jurisdiction exists. *See De Aguilar v. Boeing Co.*, 47 F.3d 1404, 1408 (5th Cir. 1995). Accordingly, the removing party bears the burden of showing that no plaintiff shares citizenship with any defendants involved in the case. *Stafford v. Mobil Oil Corp.*, 945 F.2d 803, 804 (5th Cir. 1991). Further, this court has an independent duty to analyze whether subject matter jurisdiction exists. *Ruhgras AG v. Marathon Oil Co.*, 526 U.S. 574, 583, 119 S. Ct. 1563, 1570 (1999). Any doubts as to the propriety of the removal should be construed strictly in favor of remand. *Manguno v. Prudential Prop. and Cas. Ins. Co.*, 276 F.3d 720, 723 (5th Cir. 2002). Here, there is no dispute that the amount in controversy exceeds $75,000. The dispute here is whether the parties are completely diverse and, further, whether the parties and this court have enough information to determine the proper citizenship of Plaintiff.

**A. Motion for Jurisdictional Discovery**

"[W]hile a court should determine whether it has subject matter jurisdiction at the earliest possible stage in the proceedings, some jurisdictional discovery may be warranted if the issue of subject matter jurisdiction turns on a disputed fact." *In re MPF Holdings US LLC*, 701 F.3d 449, 457 (5th Cir. 2012) (citing *Eckstein Marine Serv., L.L.C. v. Jackson*, 672 F.3d 310, 319-20 (5th Cir. 2012)). "The party seeking discovery must establish its necessity and does so by making 'clear which specific facts he expects discovery to find.'" *Pace v. Cirrus Design Corp.*, 93 F.4th 879, 902 (5th Cir. 2024) (internal citations omitted) (citing *Freeman v. United States*, 556 F.3d 326, 341 (5th Cir. 2009); *Johnson v. TheHuffingtonPost.com, Inc.*, 21 F.4th 314, 326 (5th Cir. 2021)).

When this discovery is permitted, it must occur "on a tight judicial tether, sharply tailored to the question at hand, and only after a showing of its necessity." *Smallwood v. Illinois Cent. R. Co.*, 385 F.3d 568, 574 (5th Cir. 2004). As with all discovery matters, however, "the question whether to permit jurisdictional discovery is committed to the district court's discretion." *Daniels v. Bull Rogers, Inc.*, No. PE:17-CV-00053, 2018 WL 7297874 at *2 (W.D. Tex. Feb. 5, 2018) (citing *Wyatt v. Kaplan*, 686 F.2d 276, 283 (5th Cir. 1982)).

Defendant has failed to uphold its burden to show that discovery is necessary at this point. Although Defendant relies heavily on this court's decision to allow jurisdictional discovery regarding the citizenship of Plaintiff in *Stream Family Limited Partnership*, Case No. 2:24-cv-00864-JDC-TPL (the "*Stream* case"), Defendant fails to recognize the difference in information provided to the court in that case compared to the one before it now. Specifically, in the *Stream* case, the only information supplied regarding Heard's citizenship were threadbare assertions of his "residency" in Texas. The documents filed by Plaintiff in this case, in contrast, clearly state that Heard is domiciled in Texas [*see* Plaintiff's Diversity Jurisdiction Disclosure Statement, doc. 12] and provide much more information to support this contention than the statement provided in the *Stream* case [*see* Heard's affidavit attesting to his residence, licenses, voting registration, tax, and banking information, doc. 14, att. 4]. The documents attached to Plaintiff's Motion to Remand also include the entirety of the Insurance Trust and attestations of two people stating that Heard is a co-trustee of both the Trusts. Doc. 14, atts. 3-4.

Furthermore, from its NOR [doc. 1] and other motions [doc. 14, 16] wherein Defendant repeatedly cites to the *Stream* case to support its arguments, it is clear that Defendant has access to the information that was produced in the *Stream* case that this court found sufficient enough to

make a jurisdictional determination.[3] Accordingly, as Defendant has just as much access to the material sought as Plaintiff does, jurisdictional discovery is unnecessary and the instant motion [doc. 14] is **DENIED**.

**B. Motion to Remand**

As stated above, any civil action brought in a state court of which the federal district courts have original jurisdiction may be removed to the proper district court. 28 U.S.C. § 1441(a). District courts have original jurisdiction over any civil action where the matter in controversy exceeds $75,000, exclusive of interest and costs, and is between citizens of different states. 28 U.S.C. § 1332(a)(1). The diversity provisions of 28 U.S.C. § 1332(a)(1) require complete diversity of citizenship among the parties. *Caterpillar Inc. v. Lewis*, 519 U.S. 61, 68 (1996). The removing party bears the burden of showing that removal was proper and that federal jurisdiction exists. *Mumfrey v. CVS Pharmacy, Inc.*, 719 F.3d 392, 397 (5th Cir. 2013). The removal statute must be strictly construed, and "any doubt about the propriety of removal must be resolved in favor of remand." *Gasch v. Hartford Acc. & Indem. Co.*, 491 F.3d 278, 281–82 (5th Cir. 2007).

When a trust is a direct party to litigation, determining its citizenship begins simply enough, by noting the capacity in which the trust appears. *See Ducote v. Louisiana S. R.R., L.L.C.*, No. CV 18-0582, 2018 WL 5993583, at *2 (W.D. La. Oct. 30, 2018), *report and recommendation adopted*, 2018 WL 5985692 (W.D. La. Nov. 14, 2018). When a trust litigates on its *own behalf*, look to the citizenship of its members. *Americold Realty Tr. v. Conagra Foods, Inc.*, 577 U.S. 378, 383 (2016). On the other hand, when a trust is represented in litigation *by a trustee*, look to the

[3] The court is permitted to take judicial notice of documents filed in other cases before it that involve at least one of the same parties. *Enriquez-Gutierrez v. Holder*, 612 F.3d 400, 410 (5th Cir. 2010) ("district courts have 'the right to take notice of [their] own files and records' in adjudicating cases between the same parties raising substantially similar issues as those addressed in previous cases."). As the *Stream* case involved almost identical arguments regarding the citizenship of the same Plaintiff in this case, the court will take judicial notice of the documents filed in the *Stream* case regarding Plaintiff's citizenship to aid in the jurisdictional determination of this case.

citizenship of the trustee, even if the trust has the capacity to sue or be sued on its own behalf. *Id.* at 383 (citing *Navarro Sav. Ass'n v. Lee*, 446 U.S. 458, 465 (1980)). For "traditional" trusts not capable of suing or being sued on their own behalf, the trustee's citizenship controls because the trustee "possesses certain customary powers to hold, manage, and dispose of assets for the benefit of others." *Navarro*, 446 U.S. at 464.

> Traditionally, a trust was not considered a distinct legal entity, but a "fiduciary relationship" between multiple people. . . . Such a relationship was not a thing that could be haled into court; legal proceedings involving a trust were brought by or against the trustees in their own name. . . . And when a trustee files a lawsuit or is sued in her own name, her citizenship is all that matters for diversity purposes. . . . For a traditional trust, therefore, there is no need to determine its membership, as would be true if the trust, as an entity, were sued.

*Americold*, 577 U.S. at 383. Thus, Federal Rule of Civil Procedure 17(a) provides that trustees of express trusts are real parties in interest for procedural purposes. *Navarro*, 446 U.S. at 462. Nonetheless, the trustee-derived citizenship rule "coexists" with the rule that "when an artificial entity is sued in *its* name, it takes the citizenship of each of its members[,]" including when that artificial entity is a trust. *Americold*, 577 U.S. at 383.

After the initial step of noting the capacity in which the trust appears, the analysis becomes more complex. For trusts suing in their own names, identifying the "members" of the trust requires examination of the trust relationship to determine which individuals or entities are "in the same position as the shareholders of a joint-stock company or the partners of a limited partnership." *Id.* at 382. When a trustee sues or is sued on behalf of a trust, however, courts ask a preliminary question to determine if the trustee is a real party to the controversy for diversity purposes. This involves ascertaining whether the trustees are "active trustees whose control over the assets held in their names is real and substantial." *Navarro*, 446 U.S. at 465 (1980); *Just. v. Wells Fargo Bank Nat'l Ass'n*, 674 F. App'x 330, 332 (5th Cir. 2016), *as revised* (Mar. 22, 2017). Citizens "upon

whose diversity a plaintiff grounds jurisdiction must be real and substantial parties to the controversy. . . Thus, a federal court must disregard nominal or formal parties and rest jurisdiction only upon the citizenship of real parties to the controversy." *GE Oil & Gas, LLC v. Waguespack*, 523 F. Supp. 3d 926, 931 (W.D. La. 2021) (quoting *Navarro*, 446 U.S. at 460-61) (internal citation omitted).

Consequently, when this court was faced with litigation against several trusts who were alleged to be "sham" alter egos of their settlors, this court looked past the inactive trustees' citizenships to find that the trusts took the citizenship of the settlors and beneficiaries. *GE Oil*, 523 F. Supp. 3d at 936. The court reasoned, "Where that power to control trust property is missing, the citizenship of the trustee lacks relevance when compared to the citizenship of the trust beneficiaries or other trust constituents (such as the settlors) that actually exercise 'real and substantial control' over the trusts' property." *Id.*

Under the analysis described above, if the Trusts were directly involved in litigation, they would either be participating in their own names (assuming that would be allowable under relevant state law), or they would be represented by a trustee, and the citizenship analysis would proceed accordingly. But here, the initial step in the analysis—noting the capacity in which the trust appears—cannot be made because a trust that is not a party to litigation does not appear in any capacity, either on its own behalf or through its trustee. How, then, should the analysis proceed?

Plaintiff suggests the rule—appealing in its simplicity—that any non-party trust should always take the citizenship of its trustee(s). Defendant responds that Heard lacks real and substantial control over the Trusts and contend that Heard's appointment is likely a sham for purposes of defeating diversity jurisdiction, making his Texas citizenship irrelevant. Although Defendant makes an intriguing argument that the true power over the Trusts may lie in a diverse

co-trustee or beneficiary, the court concludes that the Trusts must be deemed to take the citizenship of all its trustees, including Heard. This conclusion is based on three assumptions, tested to the extent possible against facts in the record.

The court first accepts as true for the purposes of this motion Plaintiff's assertion that the Trusts are "traditional trusts." *See* doc. 14, att. 1, p. 7. The court second assumes that the trustees have the capacity to sue or be sued on behalf of the Trusts, and third that the Trusts lack the capacity to sue or be sued on their own behalf. To the extent these assumptions are not fully supported by the record, any uncertainties are resolved in favor of remand.[4] Here it is assumed that these Trusts, one of which is formed under Louisiana law (the Insurance Trust) and the other of which is formed under California law (the Sandra Trust), are traditional trusts because both appear to be organized for the benefit of the settlors' descendants, rather than any separate business purpose. This assumption is supported by the fact that neither Plaintiff nor Defendant argues that the Trusts are "business" trusts or "statutory" trusts or separate juridical entities capable of suing or being sued in their own right, and there has been no showing that they have the capacity to sue or be sued in their own names. We assume for the purposes of this motion, therefore, that the Trusts do not enjoy the power to sue or be sued on their own behalf and would therefore need to be represented in litigation by a trustee. [5]

---

[4] The record here is not clear about the Trusts' capacity to sue or be sued on their own behalf. This assumption effectively creates an evidentiary burden to show that these Trusts have the capacity to sue in their own names before applying the *Americold* rule that looks to the trust "members" to determine a trust's citizenship. In this case, applying that burden is consistent with the general principle that the removing defendant bears the burden of showing federal jurisdiction exists because Plaintiff—who seeks remand—argues here that the Trusts derive their citizenship from their trustees. While there are cases that have applied the converse assumption—that when a trust itself, rather than a trustee, is alleged to hold membership interest in a party, then the trust should be assumed to be an unincorporated association without more information, *see, e.g.*, *Ducote v. Louisiana S. R.R., L.L.C.*, No. CV 18-0582, 2018 WL 5993583, at *3 (W.D. La. Oct. 30, 2018), *report and recommendation adopted*, 2018 WL 5985692 (W.D. La. Nov. 14, 2018); *Claret v. Port Richey Auto. Mgmt., LLC*, No. CV 18-5844, 2018 WL 2980068, at *2 (E.D. La. June 14, 2018), they all resolved in favor of remand due to uncertainties about the trusts, consistent with the result here.

[5] The law and the record do offer some support for this assumption. The Sandra Trust is organized under California law. Generally, "[i]n California, a trust is not a legal entity and has no capacity to sue or be sued." *Bagdasaryan v.*

Assuming that the Trusts are "traditional trusts" that lack the capacity to sue or be sued on their own behalf, *Americold's* standard analysis, *i.e.*, that trusts take the citizenship of their "members," is unavailable.[6] Further assuming that Heard, as trustee, has the capacity to sue or be sued on behalf of the Trusts, an assumption with some record support,[7] then the court can conclude that Heard could appear on behalf of the Trusts in any litigation involving them. This leaves us

---

*Bayview Loan Servicing, LLC*, No. CV 14-06691-SJO, 2016 WL 11744967, at *6 (C.D. Cal. Jan. 29, 2016); *see also Greenspan v. LADT, LLC*, 191 Cal. App. 4th 486, 521 (2010) (holding, under California law, "a trust is not a legal entity, it cannot sue or be sued, but rather legal proceedings are properly directed at the trustee" (internal quotation marks, alteration, and citations omitted)). Although business trusts are recognized in California, they "are *by definition* entirely distinct from 'trusts' created under the California Probate Code. The Probate Code expressly excludes from its scope trusts that are 'taxed as partnerships or corporations.' Cal.Prob.Code § 82(b)(6) (West 1991). Traditional trusts established to protect or preserve property are usually created as part of estate planning and are subject to state probate law and probate court supervision." *In re Sung Soo Rim Irrevocable Intervivos Tr.*, 177 B.R. 673, 676-77 (Bankr. C.D. Cal. 1995). The Sandra Trust appears to have been created pursuant to the California Probate Code for estate planning purposes. *See* doc. 44, att. 2 of the *Stream* case, 2:26-cv-00864-JDC-TPL (the trust document states it was created to hold certain property in trust and refers to the California Probate Code throughout); doc. 47, att. 4 of the *Stream* case, 2:26-cv-00864-JDC-TPL (an extract of the trust that states the trust's purpose is for estate planning).

The Insurance Trust is organized under Louisiana law. Pursuant to Louisiana law, "A trust, as the term is used in this Code, is the relationship resulting from the transfer of title to property to a person to be administered by him as a fiduciary for the benefit of another." La. R.S. § 9:1731. Because the law defines the trust as a relationship, the Supreme Court of Louisiana has noted that trusts are not considered "juridical persons." *In re Howard Marshall Charitable Remainder Annuity Tr.*, 709 So. 2d 662, 667(La. 1998); *see also* La. Civ.Code art. 549, Revision Comments ("a trust . . . is a 'relationship,' not an entity"). Accordingly, a Louisiana trust does not have the capacity to sue or be sued in its own name like that of a business trust. *See In re SCR Tr.*, 20 B.R. 17, 18 (Bankr. M.D. La. 1982) ("The definition notably omits any reference to the trust as a business and it is the conclusion of this Court that a business trust is not authorized under the Louisiana Trust Code."). This interpretation is further supported by the absence of law specifically allowing statutory or business trusts, *see Nat'l Collegiate Student Loan Tr. 2005-1 v. Brown*, 401 So. 3d 998, 1005 (La. App. 2 Cir. 2024)("Louisiana law does not have a 'statutory' or 'business' trust per se"), and Louisiana Code of Civil Procedure Article 699 which states that a trustee, rather than the trust itself, is the proper party to sue to enforce a right of the trust estate. Because Louisiana law does not permit business trusts, it is assumed the Insurance Trust that is formed under the laws of Louisiana is a traditional trust.

[6] *Americold*, 577 U.S. at 383. *Americold's* reasoning begins with the proposition that a business trust (such as the real estate investment trust at issue in *Americold*) is analogous to other incorporated entities and should therefore have a citizenship rule analogous to other incorporated entities. But where, as here, a trust is merely a fiduciary relationship, someone must typically sue or be sued on behalf of the trust, typically the trustee. *Id.* ("For a traditional trust, therefore, there is no need to determine its membership, as would be true if the trust, as an entity, were sued.").

[7] The Trust documents contain some indication that Heard has the power to litigate on behalf of the Trusts. For example, the Sandra Trust provides the trustee with the power to "employ, compensate and grant discretionary authority to . . . attorneys" and to "litigate, arbitrate, mediate and compromise claims and actions; and to commence, maintain or defend any claims or actions brought on behalf of or against the trust." Doc. 44, att. 2, pp. 37, 39 of the *Stream* case, 2:26-cv-00864-JDC-TPL. The Insurance Trust provides generally that "The law firm of Adams and Reese Shall serve as counsel for the Trustee and Trust" and more specifically, regarding insurance claims, that "the Trustee need not, except at its own election, institute or maintain any legal action for the collection of proceeds and benefits . . . The Trustee may compromise and settle claims arising out of the insurance policies, or any of them on such terms and conditions as it may deem advisable . . ." Doc. 14, att. 5, pp. 8-9.

with the citizenship of Heard as an essential source of the Trusts' citizenship. *Navarro*, 446 U.S. at 465.

Defendant characterizes Heard as an inactive trustee, as in *GE Oil & Gas, LLC v. Waguespack*, 523 F. Supp. 3d 926, 936 (W.D. La. 2021). But unlike in *GE Oil*, where the trusts were direct parties to the litigation, the court does not perceive a jurisprudential mandate that would allow it to disregard a non-party trustee's citizenship. If the Trusts were active participants in litigation, then upon the court's subject matter jurisdiction being questioned, a court could be called on to determine whether the trustee is merely a nominal party to the litigation, such that its citizenship should be disregarded. That analysis would stem from the rule that "a federal court must disregard nominal or formal parties and rest jurisdiction only upon the citizenship of real parties to the controversy." *Navarro*, 446 U.S. at 461. But litigating that issue now, when the trust is not a party, not even nominally, would certainly add undue complexity to the citizenship analysis and perhaps improperly exceed the purpose of the rule.

In reaching the conclusion that the Trusts should simply take the citizenship of their trustees, the court is mindful that the United States Fifth Circuit Court of Appeals does not encourage the district courts to "wade into the thicket" of fact-intensive citizenship determinations unnecessarily and has observed that the "relative simplicity" of *Navarro's* trustee-derived citizenship rule "is one of its virtues." *Bynane v. Bank of New York Mellon for CWMBS, Inc. Asset-Backed Certificates Series 2006-24*, 866 F.3d 351, 359 & n. 5 (5th Cir. 2017) (quoting *Navarro*, 446 U.S. at 465). The court is also mindful that the Federal Rules of Civil Procedure designate a trustee of an express trust as a real party in interest for procedural purposes. Fed. R. Civ. P. 17 (a)(1)(E). The same cannot be said of trust advisors, beneficiaries, or other constituents of the trust relationship. Additionally, even business trusts capable of suing on their own behalf

*can* choose to be represented in litigation by their trustees. *See Navarro*, 446 U.S. at 465. These principles buttress the conclusion that in this case, although some doubts remain as to the nature of the Trusts and whether the Trusts could be represented in litigation by their trustees, these traditional trusts must take the citizenship of their trustees without further inquiry.

These same principles apply to Defendant's argument that Heard was appointed as a sham co-trustee in an effort to evade the use of Heard's citizenship in the diversity analysis. Thus, even if Heard was appointed as an inactive co-trustee, as explained above, his citizenship is still determinative of diversity jurisdiction through his, even if solely nominal, co-trustee position in a case such as this where the Trusts are not active litigants to the action. Accordingly, Heard's non-diverse citizenship is nevertheless impugned on Plaintiff through Heard's co-trustee status for the Trusts.

## III.
## CONCLUSION

For the reasons stated, the court will deny Defendant's Motion for Limited Jurisdictional Discovery [doc. 18]. Plaintiff's Motion for Remand [doc. 14] will be granted and this matter will be **REMANDED** to the state court from which it was removed.

**THUS DONE AND SIGNED** in chambers on this 15th day of September, 2026.

**JAMES D. CAIN, JR.**
**UNITED STATES DISTRICT JUDGE**